UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LUNBING CHEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-cv-1467 (TSC) |
| | ) | |
| LEON RODRIGUEZ, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

In September 2015, Plaintiff Lunbing Chen filed the instant action against Jeh Johnson,

Secretary of the United States Department of Homeland Security ("DHS"), Leon Rodriguez,

Director of United States Citizenship and Immigration Services ("USCIS"), a component of

DHS, and Sarah Taylor, Director of USCIS's Washington District Office (collectively,

"Defendants").  (Compl. ¶¶ 13-14).

Plaintiff is presently subject to an order of deportation, though that order has been

withheld since January 2006 pursuant to 8 U.S.C. § 1231(b)(3).  This case concerns an

application for adjustment of status that Plaintiff filed with USCIS in December 2013.  USCIS

administratively closed Plaintiff's adjustment application in March 2014 on the basis that it

lacked jurisdiction to adjudicate it.  Plaintiff subsequently filed two separate motions for

reconsideration, both of which were denied.  Shortly after the second motion for reconsideration

was denied, Plaintiff filed this case.

Plaintiff alleges that USCIS's administrative closure of his adjustment application and

subsequent denial of his motions for reconsideration violated the Administrative Procedure Act.

(*Id.* ¶ 10).  He requests, among other things, that this court (i) accept jurisdiction over this case;

(ii) review USCIS's administrative closure of his adjustment application and denial of his motions for reconsideration; (iii) declare that he is an "arriving alien" eligible for adjustment under § 245(i) of the Immigration and Nationality Act (the "INA"); (iv) enjoin USCIS from refusing to assume jurisdiction over his adjustment application; and (v) order USCIS to approve his adjustment application.  (*Id.* at 10-11).

Defendants have moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Upon consideration of Defendants' motion and the parties' briefs in support thereof and in opposition thereto, and for the reasons set forth below, the motion is hereby **GRANTED AS CONCEDED** insofar as it seeks dismissal for lack of subject matter jurisdiction, and is hereby **DENIED AS MOOT** insofar as it seeks dismissal for failure to state a claim.[1]

## I.   FACTUAL BACKGROUND

Plaintiff is a citizen of the People's Republic of China.  (Compl. Ex. A; Mot. Ex. 1 at 2). On January 2, 1992, Plaintiff was stopped by officials of the Immigration and Naturalization Service ("INS")[2] in Honolulu, Hawaii.  (Mot. Ex. 1 at 1).  Through an interpreter, Plaintiff

---

[1] Because this Memorandum Opinion adjudicates Plaintiff's motion only insofar as it is brought pursuant to Rule 12(b)(1), the court will consider the materials attached as exhibits to Defendants' motion in addition to the allegations of the Complaint and the materials attached as exhibits to the Complaint.  *See, e.g.*, *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction") (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

[2] As of March 1, 2003, INS ceased to exist as an independent agency within the United States Department of Justice, and its functions related to the adjudication of aliens' applications for immigration benefits were eventually assumed by USCIS.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2196; *Malilia v. Holder*, 632 F.3d 598, 601 n.1 (9th Cir. 2011).

provided an INS official with a sworn statement in which he stated that he had come to the

United States "to stay here for good" because "the U.S. government takes good care of its

citizens," and because he would "have more future in the U.S.A."  (*Id.* at 3).  Plaintiff stated that

he planned on contacting his uncle to find work, and provided phone numbers with Washington,

D.C. area codes for his uncle's home and business.  (*Id.* at 3-4).

Plaintiff first stated that he did not have any travel documents, did not "apply for any

kind of document at all," and did not have a passport to leave China.  (*Id.* at 4).  When he was

asked again whether he had a passport to come to the United States, Plaintiff stated that he had

bought a fake Chinese passport "in the street" for "500.00 Chinese currency."  (*Id.* at 4-5).

Plaintiff stated that he did not know who sold him the passport, and that "it was just somebody in

the street."  (*Id.* at 4).  He further stated that, after arriving at the airport in China, he asked

someone else to purchase his plane ticket for him, then "boarded the plane with the fake passport

and the ticket" before "tear[ing] off the passport while [he] was on the plane . . . because it was

fake" and of "no use."  (*Id.* at 5).[3]

Plaintiff was then informed that, because he was an immigrant without a visa or other

travel documents, and was not exempt from the requirement of having such travel documents,

he was not admissible to the United States.  (*Id.*).  He was offered the choice of withdrawing his

application for admission and returning to China, or having a hearing with an Immigration Judge.

(*Id.*).  Plaintiff elected to have a hearing with an Immigration Judge.  (*Id.* at 6).  He was then

paroled into the United States, with orders to appear at an INS office in Honolulu the following

---

[3] Plaintiff also stated that he was aware "that one of the basic requirements for admission into the
U.S.A. is to be in possession of a valid passport," and that he could be "subject to prosecution for
deliberately and intentionally destroying documents to avoid inspection in the U.S.A."  (Mot.
Ex. 1 at 5).

day, January 3, 1992, for a deferred inspection.  (Compl. Ex. A).  He did not appear as ordered.  (Compl. Ex. K at 1) ("USCIS records reveal that you were paroled solely for the purposes of deferred inspection.  However, review of the file reveals that you failed to appear for deferred inspection.").

Plaintiff eventually filed an application for asylum, claiming that he would be persecuted if he returned to China.  (Mot. Ex. 2 at 2).  In January 1993, while his asylum application was pending, INS filed an Order to Show Cause (the "OSC"), thereby initiating deportation proceedings.  (Compl. Ex. B).  During an October 1993 hearing in Immigration Court, the OSC was amended to reflect the fact that Plaintiff was originally "admitted based upon [his] presenting fraudulent documents," which rendered him "excludable by law and subject to deportation" at the time of his entry on January 2, 1992.  (*Id.* at 1-2).  The Immigration Judge specifically noted that Plaintiff, through his counsel, had "admitted the truthfulness of the factual allegations contained in [the OSC], as amended, and conceded deportability predicated on the charge."  (Mot. Ex. 2 at 1).  The Immigration Judge therefore denied Plaintiff's asylum application, denied his request for a withholding of deportation, and granted him the option of voluntarily departing the country by December 31, 1993.  (*Id.* at 7).  The Immigration Judge also ordered that, in the event that Plaintiff did not timely depart the United States, he would be ordered deported back to China.  (*Id.* at 7-8).  Plaintiff appealed the Immigration Judge's denial of his asylum application to the Board of Immigration Appeals, which subsequently remanded the case to the Immigration Judge for further consideration of Plaintiff's persecution claim.  (Mot. Ex. 3 at 2).

In March 2001, while the deportation proceedings were ongoing, Plaintiff's employer filed an Application for Employment Certification on his behalf, which the United States Department of Labor approved in February 2002.  (Compl. Ex. E).  In April 2002, Plaintiff's

employer filed an Immigrant Petition for Alien Worker ("Form I-140") on his behalf, seeking to classify him as a skilled worker under the INA.  (Mot. Ex. 4).  The Form I-140 was approved by USCIS in December 2002.  (*Id.*).  In September 2004, Plaintiff submitted an Application to Adjust Status ("Form I-485") to the Immigration Court based on his approved Form I-140. (Mot. Exs. 5-6).

In January 2006, the Immigration Judge again denied Plaintiff's asylum application, but this time granted his request for withholding of deportation pursuant to 8 U.S.C. § 1231(b)(3), which provides that an alien may not be removed to a country if it is determined "that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  (Compl. Ex. C).

In September 2010, Plaintiff's daughter – a naturalized U.S. citizen – filed a Petition for Alien Relative ("Form I-130") on Plaintiff's behalf, seeking to classify Plaintiff as the parent of a U.S. citizen.  (Compl. Ex. D).  The Form I-130 was subsequently approved.  (*Id.*).  Plaintiff then filed a second Form I-485 – this time with USCIS, and this time based on his approved Form I-130 – again seeking adjustment of status under section 245(i) of the INA, 8 U.S.C. § 1255(i).  (Compl. ¶ 2).

On September 1, 2011, Plaintiff's first Form I-485, which he had filed with the Immigration Court, was marked "terminated 9/1/2011.  Acquired through other means."  (Mot. Ex. 6 at 1).  USCIS then denied Plaintiff's second Form I-485 on the ground that he had used a fraudulent passport to enter the United States.  (Compl. ¶ 2).[4]

---

[4] USCIS now "acknowledges that it was without jurisdiction to adjudicate Plaintiff's second adjustment application" for the reasons set forth in its March 2014 Notice of Administrative Closure regarding Plaintiff's third Form I-485, discussed immediately below.  (Mot. at 8 n.9).

In December 2013, Plaintiff filed a third Form I-485, again seeking to adjust his status

before USCIS.  (Compl. Ex. F).  In March 2014, USCIS issued a Notice of Administrative

Closure (the "Notice"), stating that it was administratively closing Plaintiff's application because

it lacked jurisdiction to adjudicate his Form I-485.  (Compl. Ex. G).  The Notice provided as

follows:

> USCIS records indicate that you were issued an Order to Show Cause placing you
> in deportation proceedings on January 15, 1993, and charging you with gaining
> admission to the United States by presenting fraudulent documents.  On January 3,
> 2006, an immigration judge denied your application for asylum but granted your
> request to withhold deportation.
>
> USCIS does not have jurisdiction to adjudicate a Form I-485 in any case in which
> the applicant (other than an "arriving alien") is a respondent in proceedings before
> the Executive Office for Immigration Review (EOIR).  Because when you were
> placed in proceedings you were not charged as an "arriving alien", only EOIR can
> adjudicat[e] your application for adjustment of status.

(Compl. Ex. G) (citing 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)).

In April 2014, Plaintiff filed a motion for reconsideration in which he claimed that he

was, in fact, properly classified as an "arriving alien" under 8 C.F.R. § 1.2, thus giving USCIS

jurisdiction to adjudicate his Form I-485.  (Compl. Ex. H at 5-6, 8-10).  In August 2014, USCIS

denied Plaintiff's motion for reconsideration.  (Compl. Ex. I; Compl. Ex. J at 1).  USCIS now

acknowledges that the specific reasoning cited in its August 2014 decision on Plaintiff's motion

for reconsideration was incorrect, but claims that its determination that it lacked jurisdiction to

adjudicate his Form I-485 was "ultimately correct."  (Mot. at 10 n.11).

In September 2014, Plaintiff filed a second motion for reconsideration, citing the

incorrect reasoning in USCIS's August 2014 decision and reiterating that he was properly

classified as an "arriving alien."  (Compl. Ex. J at 5-8).  In July 2015, USCIS denied Plaintiff's

second motion for reconsideration, but did not reference the incorrect reasoning in its August

2014 decision.  (Compl. Ex. K).  Instead, it reiterated the reasoning USCIS had provided in its

March 2014 Notice – *i.e.*, that it lacked jurisdiction to adjudicate the Form I-485 because, when

Plaintiff was placed in deportation proceedings, he was not charged as an "arriving alien,"

meaning that only the Executive Office for Immigration Review could adjudicate his

Form I-485.  (*Id.*).

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction and, as such, a district court "may not

exercise jurisdiction absent a statutory basis."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545

U.S. 546, 552 (2005); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that

it lacks subject-matter jurisdiction, the court must dismiss the action.").  "Limits on subject-

matter jurisdiction 'keep the federal courts within the bounds the Constitution and Congress have

prescribed,' and those limits 'must be policed by the courts on their own initiative.'"  *Watts v.

SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S.

574, 583 (1999)).  Such limits are especially important in the agency review context, where

"Congress is free to choose the court in which judicial review of agency decisions may occur."

*Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (internal quotation marks

omitted) (quoting *Watts*, 482 F.3d at 505).  The law presumes that "a cause lies outside [the

court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).  Thus,

the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.

*See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F.

Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter

jurisdiction, a court must "assume the truth of all material factual allegations in the complaint

and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be

derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir.

2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  "Nevertheless, 'the

court need not accept factual inferences drawn by plaintiffs if those inferences are not supported

by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'"

*Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United

States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).  Importantly, the court "is not limited to the

allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986),

*vacated on other grounds*, 482 U.S. 64 (1987).  Rather, "a court may consider such materials

outside the pleadings as it deems appropriate to resolve the question [of] whether it has

jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22

(D.D.C. 2000) (citing, *inter alia*, *Herbert*, 974 F.2d at 197).

## III.    ANALYSIS

Defendants argue the court should dismiss Plaintiff's claims for lack of subject matter

jurisdiction because the United States courts of appeals have exclusive jurisdiction over those

claims pursuant to 8 U.S.C. §§ 1252(a)(5), (b)(9) and (g).  (Mot. at 35-36; Reply at 2-3).

In pertinent part, these three statutory provisions provide as follows:

- "[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e)," (8 U.S.C. § 1252(a)(5));

- "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section," (8 U.S.C. § 1252(b)(9)); and

- "Except as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General

to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter," (8 U.S.C. § 1252(g)).

Defendants argue that these three statutory provisions, taken together, divest this court of jurisdiction over all questions of law and fact arising from any action taken or proceeding brought to remove an alien from the United States once a final order of removal has been issued, and lodge exclusive jurisdiction over such actions in the United States courts of appeals. (Mot. at 35-36). Plaintiff does not dispute that he is presently subject to an order of deportation. (Compl. ¶ 1). Defendants therefore contend that, while Plaintiff frames his lawsuit as merely seeking review of USCIS's decision to administratively close his application for adjustment of status, he is, in essence, collaterally challenging the deportation proceedings against him. (Mot. at 35-36). Accordingly, Defendants argue that this court lacks subject matter jurisdiction over this case, since jurisdiction for such challenges lies only in the courts of appeals.

Despite a heading in Plaintiff's opposition brief which reads, "This Court has jurisdiction to make a legal determination on whether the Plaintiff is an arriving alien, whether he is eligible to adjust status under INA 245(a) and whether the Defendants have jurisdiction over Plaintiff's adjustment application" (Opp'n at 25), Plaintiff does not address Defendants' subject matter jurisdiction argument. Instead, Plaintiff merely argues that that Defendants have jurisdiction to adjust his status because he is properly classified as an "arriving alien." (*Id.* at 25-26) (contending that Defendants "have jurisdiction to adjudicate the adjustment of an arriving alien who was paroled into the United States, including aliens who are in removal, deportation or exclusion proceedings or who have an outstanding or unexecuted exclusion, deportation or removal order"). But the question of whether <u>Defendants</u> have jurisdiction to adjudicate his <u>adjustment application</u> is wholly distinct from the question of whether <u>this court</u> has jurisdiction to adjudicate <u>this case</u>.

Because Plaintiff does not address the question of whether this court has subject matter jurisdiction over this litigation, the court will treat Defendants' subject matter jurisdiction argument as conceded.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.") (citing *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 F. App'x. 8 (D.C. Cir. 2004)).

Moreover, even if Plaintiff had not conceded Defendants' Rule 12(b)(1) argument, the court would still find that it lacks subject matter jurisdiction over this case.  Judicial review of orders of removal such as the deportation order to which Plaintiff is subject is governed by 8 U.S.C. § 1252, which provides, in pertinent part, that "[n]otwithstanding any other provision of law . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."  8 U.S.C. § 1252(a)(5).  The Second, Seventh and Ninth Circuits are in accord that § 1252(a)(5) "prohibits Administrative Procedure Act claims that indirectly challenge a removal order."  *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012); *see also Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *Estrada v. Holder*, 604 F.3d 402, 408 (7th Cir. 2010).  Regardless of how it is framed, when a claim by an alien challenges an agency determination that is "inextricably linked" to a removal order, § 1252(a)(5) prohibits it from being heard in district court.  *Martinez*, 704 F.3d at 623 (quoting *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1082 (9th Cir. 2010), *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504, 516 (9th Cir. 2012) (en banc)).

Furthermore, § 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  This section, read concurrently with § 1252(a)(5), indicates that once a removal order has been issued, an alien subject to such order "may only seek adjustment of status by filing a motion to reopen removal proceedings with an immigration judge, and [that] any subsequent challenges may be brought via petition for review of the final removal order" in the United States courts of appeals.  *Akinmulero v. Holder*, 347 F. App'x 58, 61 (5th Cir. 2009).

The D.C. Circuit also follows the longstanding rule that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the ***exclusive*** review of the Court of Appeals." *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) (emphasis in original).  Under § 1252(b)(2), the INA "commits review of agency action" exclusively to "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." *Sadhvani v. Chertoff*, 460 F. Supp. 2d 114, 124 (D.D.C. 2006) (quoting 8 U.S.C. § 1252(b)(2)), *aff'd*, 279 F. App'x 9 (D.C. Cir. 2008); *see also* 8 U.S.C. §§ 1252(a)(5), (g). "Because the INA 'vests jurisdiction in a particular court,' that statute, then, also 'cuts off original jurisdiction' in all other courts," including the district court. *Sadhvani*, 460 F. Supp. 2d at 124 (quoting *Telecomm. Research & Action Ctr.*, 750 F.2d at 77).

Moreover, § 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  In *Sadhvani,* the district court found that there are three key components to

§ 1252(g):

> The first, "[e]xcept as provided in this section," refers to the remainder of § 1252, which generally permits judicial review of removal orders only via a petition for a review in the regional court of appeals.  *See* 8 U.S.C. §§ 1252(a)(1), (a)(5).  The second key phrase is the one that begins with "notwithstanding any other provision of law."  This phrase makes it clear that aliens ordered removed cannot circumvent the exclusive judicial review in the courts of appeals by seeking relief in the district court. . . .  The final phrase in § 1252(g) divests all courts, unless indicated elsewhere in the statute, of jurisdiction over a certain class of claims – those "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."

*Sadhvani*, 460 F. Supp. 2d at 122 (citations omitted). The D.C. Circuit's affirmance of the

district court's decision in *Sadhvani* supports Defendants' argument that this court does not have

jurisdiction over this case.  Simply put, aliens cannot avoid the terms of 8 U.S.C. § 1252(g) "by

simply characterizing their complaint as a challenge to a denial of adjustment of status, rather

than a challenge to the execution of a removal order."  *Cardoso v. Reno*, 216 F.3d 512, 516 (5th

Cir. 2000).

In sum, Plaintiff is presently subject to an order of deportation, and the instant action

arises out of his unsuccessful attempts to adjust his status in order to remain in this country.

(Compl. ¶ 1; Mot. at 6-10).  Although Plaintiff only "indirectly challenge[s]" the removal order

to which he is subject by framing this case as seeking judicial review of USCIS's decision to

administratively close his adjustment application, he has not persuaded the court that this case is

anything other than "inextricably linked" to the outstanding order of deportation to which he is

subject. *Martinez*, 704 F.3d at 622-23; *see also Morales-Izquierdo*, 600 F.3d at 1082-1083

(finding that § 1252(a)(5) barred challenge to adjustment of status determination because

removal order was contingent on status determination).  Furthermore, because § 1252(a)(5)

"commits review of agency action to the Court of Appeals," this suit "is subject to the ***exclusive***

review of the Court of Appeals." *Telecomm. Research & Action Ctr.*, 750 F.2d at 75 (emphasis

in original); *Sadhvani*, 460 F. Supp. 2d at 124.  And for the further reason that this case "aris[es]

from the decision or action by the Attorney General to commence [deportation] proceedings"

against Plaintiff, exclusive jurisdiction belongs to the United States courts of appeals.  28 U.S.C.

§ 1252(g); *Sadhvani*, 460 F. Supp. 2d at 122 ("aliens ordered removed cannot circumvent the

exclusive judicial review in the courts of appeals by seeking relief in the district court") (citing

*Sissoko v. Rocha*, 440 F.3d 1145, 1155 n.14, *opinion withdrawn and superseded on denial of

reh'g*, 509 F.3d 947 (9th Cir. 2007)).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion is hereby **GRANTED AS CONCEDED**

insofar as it seeks dismissal of this action for lack of subject matter jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(1).  Because the court's decision on subject matter

jurisdiction requires the dismissal of this action, the court need not address Defendants' request

for dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6),

which is hereby **DENIED AS MOOT**.

An appropriate Order accompanies this Memorandum Opinion.


Date:  August 5, 2016


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge